of the U.S. v. Anthony Elonis. Mr. Ryan? Thank you, Your Honor. Tom, are you there? Yes, good afternoon. Great, good afternoon. Good afternoon, Your Honor. Thank you, and may it please the Court, my name is Abraham Ryan, here on behalf of the appellant, Mr. Anthony Elonis, and if it's acceptable, I'd like to reserve two minutes of my time for rebuttal. Okay. Thank you. I'll address both the issues in this case today, the harmless error question and the question of the appropriate mental state. It's our position that regardless of the outcome of the mental state question, the error in this case was not harmless. But I'll start with the recklessness issue. I'm sorry, you'll start with? I'll start with the recklessness issue, Your Honor. Okay, but, you know, it would be of great help to me if before you got to that, whether you could just tell us where we stand with respect to what the Supreme Court said and maybe tease out a few of the concepts, particularly knowledge. Absolutely. And at least it would help me to understand then where we are and where we want to go if we're going to go the reckless route. Okay, absolutely, Your Honor. So without stating the obvious, the case went up to the Supreme Court, and the Supreme Court told us that the statute, 875C, even though it's silent on its face as to mental state requirement, it requires some subjective mental state. That's what the Supreme Court said. Some subjective mental state? Yeah, that's. It requires some subjective mental state on the part of the defendant, something beyond the negligence standard which was applied in the district court, which said if a reasonable person, regardless of what was going on in the defendant's mind, if a reasonable person would have understood his communications to be threats, then he's guilty. The Supreme Court said that's not enough. You need something subjective. All right. And it said, you know, we want to know what Alanis was thinking is important. Correct. So what is that thing? So tell me if this is answering your question, Your Honor. The Supreme Court went on to say that the touchstone of criminal liability in a case like this, in a case where the statute is silent on its face as to the mental state requirement, is awareness of some wrongdoing. Okay. That's the issue. The question is, and the question before this Court is, what level of awareness is required? Now, I would submit that. Hold on. We say awareness of some wrongdoing. Can you amplify that? Because it sounds like you're suggesting that the Court had some discussion in there about ignorance of the law is not an offense, and it sounds like you were suggesting that he had to know that it was illegal, but you're not suggesting that. Absolutely not. No, that's right. We're not suggesting that he had to know it was illegal. We're suggesting that he, and the Court discusses that. It's correct. It doesn't matter what he thought about the law, but he had to have some awareness of the character of what he was doing that made it wrongful. Combining two things, character that made it wrongful. Forget the second part of that. Okay. What if he had an awareness of the character of his actions, the quality of his actions, and forget the last part of what you said, would you concede that that would be sufficient under the opinion of the Supreme Court? If he had awareness of the character of his actions? He was conscious of what he said in his postings, and I don't want to go too far beyond that because that shades into where I want to go with that. Right. Well, no. No, Your Honor, I wouldn't concede that that's enough. If he was simply being conscious of the words that he was saying is not enough. I think that's actually the standard that was applied below that the Supreme Court said wasn't good enough. Below the jury was told, as long as he knows the words that he's saying, and he speaks the English language so he understands what the words mean, it doesn't matter whether he knew what his mental state was. The reasonable person, the reasonable hearer problem that drags in the negligence standard. That's why I'm trying to stay away from that. Correct. So if he was aware of the quality of his statements, what in addition to that is your contention would be necessary? Well, what's necessary in our position is what's necessary is an awareness of the threatening quality of his statements. Not just the words and what they mean, but that a reasonable person would understand them to be threats. And, you know, it sounds like... You're saying that would be enough? Yes, awareness that a reasonable person would understand his communications to be threats. So he basically conceded that when he justified? No, he did not, Your Honor. In fact, and contrary to the government's repeated statements in the brief, he didn't say anything like that. He said, in fact, he said someone who knows me knows I'm never going to hurt anyone. In other words, someone who's familiar with the context, which is a key part of the definition of an objective threat, someone familiar with the context knows that my communications are not serious expressions, serious being another key part of the definition, serious expressions of an intent to... What about the threatening agent? She didn't know him. Yes, well, okay, that's true with respect to the agent. He also said, with respect to... Or certainly the threat against the elementary school. With respect to that particular communication, he testified unambiguously, I would not classify it as a threat. His testimony was not. I knew that a reasonable person would take this language or this communication to be a threat. It was the opposite. He said, I don't think a reasonable person would consider this a threat. So a speaker can insulate himself under those circumstances with conditional statements. Is that your view? Your Honor, that's not my position exactly. My position is a jury was entitled to consider those statements and decide whether they believed them. And the jury was instructed that his intent was not at issue in this case. Essentially, that's right. And the government argued that as well in the closing argument. Let me back up just a half a step. On the purpose, Supreme Court said that you can have the purpose to make a threat. So I assume that means that that goes to subjective intent along the lines that the Ninth Circuit has written. I believe that's right. And then they use an objective standard when they're looking at whether a reasonable person would take it as a threat. As a separate step. Exactly. Correct. Exactly. But I gather we're under the knowledge area here in this particular case. That's right, Your Honor. And Judge McKee was saying that what does constitute knowledge? It's a conscious awareness. They use that term as well. That a reasonable person or that Tara or a specific individual will take it as threatening, could take it as threatening, might take it as threatening. Do you want to pick one of those? Yes. Take a crack at that. The awareness standard that we're asking for, and I think is the correct one, is a conscious knowledge that a reasonable person would understand the communication to be a threat. It's not enough to have a conscious knowledge that somebody out there who may not be reasonable, just some person out there will take it as a threat. If that were enough, you would have absurd results. And this is in our brief, so forgive me if I'm repeating myself. But consider, you know, I'm a Facebook user. I have a pit bull. I know that there's people out there who think photos of pit bulls are threatening. You know, am I going to be guilty of a crime if I post a photo of a pit bull? So our position is an awareness that a reasonable person would understand the communication to be a threat. What about, because I'm concerned about mixing, or it's probably okay to mix the subjective and the objective as we're doing, but bringing in the reasonableness of the observer or the listener. What if it isn't enough for the jury to be convinced we had a reasonable doubt, not that a reasonable person would have regarded it as a threat, but that the specific individuals against whom, and you're probably going to have an issue with the way I just worded that, but the specific individuals mentioned in the communication may well take it as a threat or that they would take it as a threat. Why wouldn't that be enough? That seems even further away from the protection of the First Amendment than what you're advocating. Well, Your Honor, I don't think that that's enough. I don't think a knowledge, specific awareness, that a particular person would understand the communication to be a threat is enough. And for the reason that I just said, I think that would bring in sort of absurd scenarios where I could be guilty of making a threat if I, I mean, to use an extreme, and I know this is absurd, but say I know that a particular member of the Ku Klux Klan feels threatened when protesters come to the rallies, and I go to the rally. Am I, you know, with that knowledge? Yeah, but that's the general versus the specific problem that, and it brings up the kind of scenario we had in Watts. What I'm trying to do is take your scenario and pin it down more specifically so that we're not talking about the objectively reasonable person who is the observer or the listener, but the specific people who are mentioned in the communication. If the communicator believes that the persons who are the subject of the communication would, not just could, but would interpret what's being communicated as a threat, start from that point, it seems to me that would clearly be enough, wouldn't it? Well, my position is it wouldn't be enough, and I think the thing that I left out in my prior answers is, if I believe that my communication is objectively not a threat, if I think it would be absurd for someone to feel threatened by this, but I know a particular person out there would, can I have committed a crime? If I know that even a particular person about whom I'm speaking would, can I have committed a crime? If it's my subjective belief that it's absurd for that person to be threatened by that. What if, let's look at his former wife in this case, and let's just assume that she's especially sensitive, more sensitive than a reasonable person, but if she took it as a threat, would that be sufficient, or would it have to be a reasonable person standard then? It's my position that it would have to be a reasonable person. Acknowledge that a particular person, even if it's a person who's mentioned in the communication, would understand the communication to be a threat, shouldn't be enough to turn the communication into a crime, because it would sweep in, and forgive me for repeating myself, but it would sweep in situations where the particular person is completely unreasonable. Let's factor reasonable into the equation then. Okay. The definition from Webster's that Justice Alito relied upon, in my view, the term threat in Section 875C can fairly be defined as a statement that is reasonably interpreted as an expression of an intention to inflict evil, injury, or damage to another. And he's just saying to another. He's not talking about the persons who are in the subject of the communication. What's wrong with that definition? Actually, Your Honor, you just articulated it better than I have been trying to do over the past few minutes. That's exactly the point. Justice Alito is saying a threat is an objective, you know, there is such a thing as an objective threat. That's how would a reasonable person understand this communication. But the Supreme Court also says that the defendant has to have some subjective awareness as to that objective character of his communication. So the defendant has to know that his communication is objectively a threat, i.e., would be understood by a reasonable person. Why wouldn't it be enough if he knew that it could reasonably be interpreted as an expression of intention to inflict evil, injury, or damage, and forget just to another because that's, I think, that might get away from the two-threat scenario. But to the persons who are the subject of the communication, that seems to nail it all down. If you understood that it could be interpreted in that way, could reasonably be interpreted that way, but might not be? Well, could would allow for the possibility that it wouldn't necessarily have to be. It's possible, even probable. So if we take quit out of it and say the threat is defined as a statement that is reasonably interpreted, but let's say will probably be interpreted as an expression of an intention to inflict evil, injury, or damage to the person or persons who are the subject of the communication, doesn't that nail it? Your Honor, I think it doesn't nail it unless we get beyond probably. If we get to certainly or to a near certainty, yes, it nails it. I think if we're talking about a scenario where a defendant is... We get near certainty, then you're talking specific intent. Yeah, we're talking knowledge, correct. The Supreme Court did use the word will be understood. Yes, Supreme Court did use that language, that's true. And whether they meant could be or would be is one of the questions. What about some of the things that Mr. Alonis said? You know, I was conditional, I didn't mean it. You know, this was a rap song, this was therapeutic. I mean, obviously absent an explicit admission, which you may not get in most of these cases, you're going to have to look at context and circumstantial evidence. But why can't a speaker effectively insulate himself by saying this is therapeutic and, you know, anybody would know that I didn't mean it. I'm just getting it off my chest. Sure. So juries are asked every day to make a determination about the mental state of a defendant. Did the defendant intend to do X or Y? Yeah, that's a part, as this court knows, that's a part of criminal law, federal criminal law. It's very familiar. So that happens all the time. So, yes, the jury does have to look at context. They have to look at, you know, the defendant's history, the relationship between the defendant and whoever deputed a victim. And the defendant may get on the stand and testify I didn't mean it, and the jury should have an opportunity to evaluate that testimony and decide whether they believe him or not. But that's not what happened in this case. He got on the stand. He said those things. He even said I didn't think that these were threats. And the jury was instructed no less than seven times by the court, and then this instruction was repeated ten more times by the government, that his subjective state of mind didn't matter. So that testimony was essentially read out of the case. And had those specific instructions not been given or argued by the government, would we have a different case here? Had the jury been instructed on what we considered? Simply had not been instructed that they were not to consider Mr. Alonzo's intent. Would we have a different case? Your Honor, I haven't given that a lot of thought. I think we might be here arguing about the same thing in that situation. We would have a situation where the jury had not been instructed on an element of the crime, and we may have similar arguments. But it would be different. It would be different than this situation. I see that my time is up, if you have no further questions. Do you have any questions? My question for Mr. Ryan is, obviously the Supreme Court left open the question of what standard should be applied, whether it's recklessness or knowledge or some other standard. And my question for you is, is it more appropriate for us to articulate that standard now at this time, or is it more appropriate for us to remand the case for the district court to discern that standard, subject to our review? Well, Your Honor, it seems to us that it seems highly likely to us that the grand jury in this case was instructed on the wrong mental state element, was instructed that subjective state of mind didn't matter. So it seems to us probably the appropriate thing to do is to remand with instructions to dismiss the indictment. However, we, you know, we... Well, we can't do that though, can we? Because are you arguing that this case is not susceptible to harmless error review at all? Well, I'm arguing that the error, the instructional error at trial is susceptible to harmless error review, yes. All right, well then my question is, should we do that now or should the district court do that? It probably would be more efficient. I mean, this is a question that I may not be qualified to answer, but I think it might be more efficient to remand to the district court. Because if you do that, you know, a lot of things could happen between now and another appeal, and you may not end up with this case again. First of all, the government could decide not to retry, you know, et cetera. And if it does come back up to you, you'll have the benefit of a record below that was tailored to a subjective mental state standard instead of a record here where subjective mental state may or may not really have been the target of a lot of the evidence. And you'll have the benefit of briefing and an opinion below that may hone the issues a little bit. Thank you. I'd like to ask a question about the recklessness standard. Yes, sir. I know you're well aware of all the pluses and minuses, but why wouldn't it be sufficient, and let's leave aside the constitutional argument for a minute, but why wouldn't a reckless standard along the lines that Justice Alito elucidated be sufficient here for the statute, especially since the Supreme Court said, you know, we only have to impose the least amount of mens rea that is proper in terms of distinguishing innocent from criminal conduct here. And certainly there's a long line of cases that criminal recklessness can suffice. And, you know, one of the questions, of course, is does it suffice in the First Amendment area? But at least statutorily, why isn't it sufficient? Well, Your Honor, yes, there are cases that say that criminal recklessness can suffice. They're unusual in the context of federal criminal law. In fact, in my research for this argument, I found that no other federal circuit other than this one has a model jury instruction that defines the term recklessness at all. So it's unusual. The only other case that we found in our research that finds that a subjective mental state is required for the Statute 875C and goes on to discuss whether recklessness is enough, finds very quickly recklessness is not enough and moves quickly beyond that to knowledge. And I think that makes sense because recklessness is not the norm in the federal criminal law. And, in fact, you know, you could ask why would we assume that Congress intended for us to read into a statute where it was silent as to mental state a recklessness standard, which is outside the norm, as opposed to a knowledge standard, which is much more common. And, in fact, the answer is... Had they thought about it, they would have put the standard in themselves. They just didn't think about it. Perhaps. And they thought about it with strict liability, which is, I guess, possible. Well, perhaps. But I think the Supreme Court told us that we should assume that they did not want strict liability, right? Right. And so just, you know, moving along here, the government doesn't point to a single case in which a court does what they're asking you guys to do today, which is take a statute that's silent on its face as to the mental state requirement and read into it a recklessness standard. All the cases that I... Garrison? Would Garrison count? Garrison is a constitutional case. Yeah, true. So Garrison makes a decision as to recklessness or, you know, what mental state requirement the Constitution requires for defamation, and it settles on recklessness. But that's constitutional. That's not statutory. All the cases that I've seen that deal with that issue, reading into a statute of mental state that's not written into the text, just talk in terms of knowledge or not knowledge. They don't talk about recklessness because it's not part of the norm. And, if I may, the Supreme Court in this case told us that the touchstone of criminal liability is awareness of some wrongdoing. Awareness, and in a threat case, the wrongdoing is making a communication that is a threat. So it seems to me if you follow the Supreme Court's logic to its logical conclusion, you get awareness that the communication contains a threat. What about awareness of a substantial risk that it may be threatening? That's not enough? I don't believe that is enough. I think that you're describing a recklessness standard, and a recklessness standard may be appropriate in some cases. It may be appropriate in a situation, for example, where there is a bright line between wrongful and not wrongful conduct. And a defendant can know if he is or is not crossing that line. Why wouldn't this be one of those cases, a bright line case? Well, if a defendant genuinely doesn't know, which is what we're talking about, if a defendant genuinely doesn't know whether his communication contains a threat or not, he has no realistic way of finding out. His only options are to just not speak in the face of a risk that he might cross the line. That's circular, because if you put the risk in the answer, but the question was more directed toward awareness of a substantial risk that one would interpret it as. Forget threat, even. Awareness of a substantial risk that one would interpret it as an intent to injure. If that's the standard, and that seems like it's pretty close to reckless, why is that a problem? Yes, that is a recklessness standard that you're describing, I think, Your Honor. I don't think it's appropriate, because if a defendant doesn't know whether or not his communication contains a threat. You keep putting threat. I understand you have to do it, because otherwise you have to answer the caution, and that's going to hurt you. So you've got to put threat back in there. But try, with all your moral fiber, to keep threat out of the answer. And let's say that the statute requires that the jury has to know that there is a substantial risk that one's conduct, one's communication, will cause one to believe that there's an intent to injure. I got garbled in what I was trying to say. The standard would be the defendant has to know that there's a substantial risk that his communication. That one person mentioned or at whom the communication is aimed, to get away from the general wrapping stuff, would interpret that as an intent to do harm. Okay. The reason that I think that's not an appropriate standard is because the defendant in that situation, faced with knowledge of a risk but not knowledge to a near certainty of what you just described, has only two options, not do anything because there's a risk, or speak and wait and see if he gets convicted of a crime. I'm trying to figure out how you got near certainty into my question. How did that happen? I said in a way there was no issue of near certainty or mathematical certainty. I said near certainty as an alternative to knowledge of a risk. Okay. Forget that. That's just a substantial risk. And we get near certainty into it, although this may not be the best case to argue that with these facts. So forget near certainty and just argue substantial risk. What is wrong with that standard? Okay. If a defendant is aware of a risk that his communication will be understood as a crime. This is a substantial risk that the person hearing it or one who the communication appears to be aimed at, whom the communication appears to be aimed at, would interpret it as an intent to do harm. Right. In that situation, the defendant is faced with no option other than to be non-silent. Not make the communication, which wouldn't be such a bad option. Well, my response to that is this. I mean, we're talking about a situation where there's a risk, and I apologize for going back to certainty, but we have a risk but not a certainty. But it was substantial. A substantial risk. Even a substantial risk, yeah. So a defendant would be in a situation where knowing that there's a substantial risk, he would remain silent. I hope you understand what's wrong with that picture. Yeah. So nearly inevitably, defendants who think there's a risk but don't know would remain silent, and very likely speech that is perfectly fine, that doesn't actually cross the line of the statute, would end up being chilled. That's the point that I'm trying to make. That interpretation would cause people to not commit conduct. Things that might be interpreted as threats. Right. Even if it's not objectively a violation of the statute, it would end up chilling conduct that doesn't violate the statute. You keep putting rabbits in the head there because I'm trying to get at what does violate the statute. And if all those conditions that I keep putting in, you're trying to take out, if all those conditions are present, an awareness of a substantial risk that one hearing it or at whom it is aimed were interpreted as an intent to do harm to that person or to one named in the communication or to one at whom the communication is aimed. And the person says, well, you know, I could get in trouble for doing this. I better not tell these schoolchildren that I'm going to blow up the school. I better not tell the agent that I'm going to blow her up, and I better not tell my former wife that her protection order won't stop a bullet. And I'm trying to help me get my mind around why this is a bad result, that the quote threat doesn't get uttered. I'm going to try to phrase it another way. The mere fact that there is a substantial risk that a person would understand that the communication would be a threat. You put me in there. Okay. The fact. Pardon me. The fact that there is a substantial risk that the communication would be understood as a threat doesn't get you over the line for liability because the statute requires a threat, an actual threat. The statute says, I don't actually have the text of the statute. It does, but then define threat the way I just defined it from Justice Lewis' contrary opinion, and that's the definition of threat. The term threat in 875C can fairly be defined as a statement that is reasonably interpreted as, and then he's quoting from Webster's, an expression of an intention to inflict evil, injury, or damage on another. And that's how we define threat. Then what it shows would be the expression of a threat, wouldn't it? It would show the expression of a threat, yes, probably, but. It would show other stuff. It would also show other stuff, yes. So, you know, let me just nail this down. The definition that you just read from Justice Alito says would reasonably be interpreted, not may or there's a risk that it was. Is that a reasonable person's standard? Yes. I recognize there's a couple of standards here. The statute requires, in other words, of an actual threat, objective threat, which is determined by a reasonable person's standard. That is required to violate the statute. The Supreme Court has told us what's also required is some sort of subjective mental state. You need an objective threat and a subjective mental state, and that's the question that we're arguing about. Yes, a reasonable person's standard is required to define a threat, but we also need a mental state. If you have no further questions. Thank you, Your Honor. Mr. Libby, you're not Bob Salzberg. Where's Salzberg? I'm sorry, Your Honor. You've got the JV today, which is why Mr. Nemitz is sitting at the table. It's a late day. He's not going to say anything, Bob. I'm sorry to disappoint, Your Honor. Well, yes, it is a disappointment. Not for me. He ran away. This time in Washington is the acting pardon's attorney, so you end up with the second straight. The Supreme Court gave us two standards to judge the intent in this case, and the government's argument is pitched completely to the second one, and that is that the defendant transmitted the communication knowing it would be perceived as a threat, and the evidence in this case was not only on that point, not only overwhelming, it was uncontested, and I can go through all of that. To go back to a question that the court was asking Mr. Ryan about what about the person who is it a subjective, from the point of view of the victim, and if I said to you, Your Honor, I'm going to poke you in the arm, that's not a threat to do serious bodily injury to you, so it would not be a true threat, and a jury would not think that it was perceived to be a true threat, but if I sent that to a hemophiliac who was at risk for bleeding to death from that, and I knew that the person was at risk for bleeding to death, it seems to me that when you look at what's a true threat, the jury has to look at all the facts and circumstances, and knowing something about the recipient, if the defendant knows, if the threatener knows what the recipient's problem is, then it is a threat. The evidence in this case, it seems to me, in supporting that it's overwhelming, meeting the meter standard, is first the chronology of this case, the facts that are laid out, second, the defendant's testimony, and third, what he put along with the postings. The chronology is he gets fired and told when he gets fired that the posting that he put up with a knife at another woman's throat saying, I wish, was perceived as a threat. So he's already getting notice that your conduct is over the line. He posts the nuclear bomb thing as opposed to just a firecracker, and then you need to have damage control, and he was acquitted on that count. He posts another one right after that about basically a 9-11 scenario, planes crashing into Dorney Park, and with this, two of his friends on Facebook start exchanging messages in which they talk about how afraid they are about him. One of them says he said he was going to get a gun and he had some people at Dorney Park he was going to use it on. In his position, he could have gotten keys. And we know he read this not only because he testified to this, but because he saved those posts to his hard drive, obviously pleased enough that he was having this impact on people. And he replies two days later with a threat that begins, Moles, didn't I tell you I had several? That's a reference to guns because the next sentence is, y'all saying I had access to keys, and then talks about basically showing up at the Halloween haunt at Dorney Park at night, armed, in the dark, where he's going to cause mayhem. So knowing these two people, and his only answer to that is, well, I don't think that Jill and Robert are quote reasonable people. He posts something about his wife saying, you know, there's only one way to love you but a thousand ways to kill you. And then he describes a fairly violent murder of his wife. His wife takes him to court for protection of abuse act. He tells us he doesn't think his wife is reasonable in reading this. But the Berks County Court of Common Pleas judge issues a protection from abuse act order, and the finding has to be that there is a serious threat of bodily injury or death to the person receiving the threats. But that judge, I guess, is not reasonable either. Right after that hearing, he posts the, it's illegal to say, quoting from the whitest kids you know. When you look at that video, it's really clear that it's a very different context. There's no question that is meant to be a satirical play. It's meant to be humorous. There's no doubt when you read this, particularly when you see the schematic diagram showing where his wife lives, that there's nothing intended to be humorous about this. He follows that up with a folder PFA and put it in your pocket and stop a bullet. He threatens the state police and the sheriffs. He then goes on and threatens to slaughter children in a kindergarten. This brings out an FBI agent. I guess he's going to say, well, the FBI is being unreasonable too. And instead of stopping, which most people would do when you suddenly realize that that this is a little bit bizarre. But the FBI is now showing up because they think it's criminal. And he posts the little agent lady, the next time I could have slashed your throat and the next time I'll have a bomb. So just in terms of the chronology, the evidence is overwhelming that he knows that these are going to be perceived as threats. And his testimony is, I was trying to be shocking. And when he says there was violent imagery, but there was no violence intended, what he confuses is that a threat doesn't mean the ability or the desire to carry it out. And the judge instructed the jury it's not necessary. The government proved the defendant intended to carry out the threat. He said he knows that it would be interpreted. I know your argument is that it meets any standard, but is it a standard that he knows or that he should have known or has reason to know or probably knew? Well, the Supreme Court said one of the clear ways that the government can prove this is by showing that he transmitted the communication knowing it would be perceived as a threat. Now, the unresolved question in the Supreme Court is whether it could be a reckless standard. I don't think this court has to get there. I think the evidence is so overwhelming that he knew it would be perceived as a threat. And each time he got a reaction, which he enjoyed, he just kept going farther and farther. That's a harmless error argument. But wouldn't he be entitled, if we agree with you on the substance of your argument, wouldn't he be entitled to, I know you have the Nieder case sitting there, which would answer this in the negative, but wouldn't he be entitled to a jury instruction as to the correct mental state under 875C? Nieder makes it clear that whether the instruction is a misdescription or an omission of the element of the crime, it doesn't matter. And Nieder cites all the post-Stanstrom cases, all dealing with mental state, all telling a jury they can presume a particular mental state from certain facts. And Torello v. California, which is one of the cases cited in Nieder, is a mandatory conclusive presumption that if a person doesn't return a motor vehicle in a certain number of days, you can presume that he took it with the intent to steal it. That completely took that issue away from the jury, and yet the Supreme Court said, sent it back, review on a harmless error standard. And so Nieder makes clear that it doesn't matter whether you misstated the instruction or whether you omitted the instruction, it is still entitled to harmless error review. That's a very fact-specific inquiry, and there's no question about that. Each case will stand on its own. Mr. Levy, why should we conduct that review ourselves rather than having the district court do it in the first instance? In part because it's already been briefed, and we've now argued it before this court, and the court's been considering it, so we've already expended the resources to think about the issue. To go back to the district court, the district court could reach the same conclusion, then it comes back up here. It seems to me that the issue is properly resolved at this level. You have a trial record. If that record is sufficient to decide harmless error, that's the end of the matter. Well, there's a prior decision that needs to be made as to what's standard. Would you agree that it's not crystal clear that recklessness isn't standard? The Supreme Court seems to hint that recklessness is the standard. I'm interested in your thoughts on that as well. The Supreme Court does not decide whether recklessness is the standard. Only Justice Alito says that it is. My first position is that you don't need to decide that in this case because the evidence that he knew that it would be perceived is overwhelming. On the question of recklessness, however, it involves proof the defendant consciously disregarded a substantial and unjustifiable risk that his statement was going to be perceived as a threat of harm to others. So it's not just substantial. He gets all these communications from other people. But I think you look at the content of what he's posting. This isn't something that's kind of borderline. Every one of these is a threat to murder people. Two to murder his wife, one to murder kindergarten children, and one to murder an FBI agent. There's no question that the risk that he was taking was unjustifiable. I'm sorry, if you will finish Judge Hardiman's question. Yes. As I understand it, he is saying, look, whatever you may think of my arguments or my motives or my intent, I had certain views and the jury was entitled to at least hear them. And the judge instructed the jury that what I thought didn't matter. And now the Supreme Court says it does matter. What Alonis thought does matter. Well, how do you get over that? The same way Nieder got over the failure to charge on materiality. The question of whether it was material was not even given to the jury. In this case, Alonis says, I knew what people were saying and I didn't care. I mean, he says other things as well that confirm this. One of them is revenge is a dish best served cold with a delicious side of psychological torture. Also, I think when you look at all the posts where he puts his disclaimer, he argues, I didn't mean it to be, I was trying, I didn't send it to be a threat. But that's really an admission that I know that when I send this, people are going to perceive it's a threat. If he were posting something innocuous, if you're going to post some fictitious rap song about cooking meatloaf and he doesn't either have beef or a recipe, there's no way he's going to put up with it. Do you know this rap song? Pardon? Do you know this rap song? No, I don't. But it's way after my time, Your Honor. Okay. But there's no way he's going to post a disclaimer. He's posting a disclaimer because he's telling everyone, I know you're going to see this as a threat. So he's admitting in that conduct that this is going to be perceived as a threat. So in every way, that issue was not contested in front of the jury, was admitted before the jury, and there's no way that it's going to be resolved any other way. Judge McKee, what do you think? I'm sorry. Are you saying that he admitted the requisite intent or that we can infer that from everything that is? He admits that he knew it would be perceived as a threat. I don't even have to get to recklessness. Recklessness is easy on these facts. And when he has his wife getting a PFA order, when he has people saying, I'm scared about this guy, I think he's a ticking time bomb. When the FBI shows up at his door and he keeps posting these things, he knows what he's doing. He knows that all this is going to be perceived as a threat, but he tells us it's therapeutic for me to do this. Well, if it was really therapeutic, these wouldn't be public posts. They would be put in a private journal and saved. That would be therapeutic. This is designed to be delivered to people to scare them to death. Which may be therapeutic. In fact, it's therapeutic. But that type of therapeutic becomes criminal. So you don't think we, if we're going to decide this, you don't think we need to get to the recklessness standard at all? I don't think that you do. On the other hand, if you're going to send it back to the district court with the idea that there's going to be a new trial, then it certainly would be helpful for the district court in this case in the future to know whether or not recklessness is an appropriate standard. And there, it seems to me the Supreme Court said is you use the minimum standard necessary. In this case, there were two issues that would make you raise a question about that. One is the First Amendment. And it seems to me Garrison v. Louisiana takes care of that. If the district attorney of New Orleans can stand up and accuse the judges of being corrupt and lazy, classic First Amendment speech, classic criticism of the government, and the kind of speech that can be met with more speech. No, the judges aren't lazy. Here's their track record. Here are the number of cases they disposed. And all that's required for that is recklessness. Iwannis' posts can't be met with more posts for a reason. They're designed only to strike fear. And he basically admits these are true threats. It's just I don't mean them. And if recklessness is sufficient for Garrison's true political speech, then it's sufficient for the art that Mr. Iwannis is posting. The only other case I think is important is the Gibson case. And in Gibson, the conduct could be a violation of the antitrust law under some circumstances, but completely protected under others. So it's ambiguous on exactly when you cross the line. And there the Supreme Court said recklessness is not going to be enough. This is business conduct that could be harmful or it could be helpful. And so there we need to be sure that the person is acting with knowledge of what they're doing. Recklessness will not do. In this case, with the kind of statements we have, recklessness should be more than enough. Does Garrison still stand up after the advent of the Internet and all the stuff that's floating around in social media? I think so. I mean Garrison says that the standard is going to be that you act with either knowing it's false or in reckless disregard of the truth. I mean the Internet makes it much easier to find the truth than it did back when Jim Garrison made those statements. Oh, I wish that were true. I've resolved a lot of arguments with my wife by just looking things up on Google. I see my time's up unless the Court has other questions. Thank you very much. Thank you. Your Honors, it's important to keep in mind what the standard is that's to be applied on harmless error review. I think that might be getting lost a little bit here. The Chapman standard for harmless error review is, and I'm going to read it, whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. And I submit that what we have here is, at the very least, a reasonable doubt. It's not the case that Mr. Alonis admitted from the stand that he had the requisite state of mind, that he had knowledge. As I mentioned before, he specifically testified that he did not believe that the language… What about the fact, as Mr. Levy pointed out, that there's a protection from abuse order? I mean, if that doesn't put somebody on notice that his acts were threatening, it's hard to find something that might. And there were other things as well. But just that fact alone should have said this is being perceived as threatening, and yet he continued to do it. Well, okay, let's start with the protection from abuse order. It's true that an order was obtained, and it's our understanding, based on the record, that it was based at least in part on some Facebook posts. We don't know what the Facebook posts were. We know that he made some fairly outrageous Facebook posts prior to the protection from abuse order. Some of which could be interpreted as actual direct statements of an intent to harm somebody, potentially. It seems likely that those were the basis of the protection from abuse order. But all that that tells us is that he arguably… I mean, the most one can infer from that is that he knew that those statements had been perceived as threats. But the statements that come after the protection from abuse order, the ones regarding his wife, are of a completely different character. They are statements about the rules governing speech. And, yes, they include references to violence and references to his wife, because he's talking about… The PFA order, how does that go to the rules governing speech? Well, so… The PFA order, put it in your pocket, and we'll snap a bond. How does that go to the rules governing speech? He's commenting on the fact that there's a PFA against him, which governs what he's allowed to say and what he isn't. So a couple of examples, or the only two examples, of post-PFA statements that had to do with his wife. One is the lengthy, well, regular length, transcript of this well-known comedy sketch. It's about rules governing speech. It begins, did you know it's illegal for me to say this? It's not illegal for me to say that it's illegal for me to say it. It's a parody of rules governing speech. And he, yes, he… In this context, it's not exactly George Cohen and some of the words you can't say. Arguably, it takes on a very different meaning in this context. Arguably. That's precisely my point, Your Honor. Arguably, yes. But that, it should be for a jury to determine. You know, that is one inference, yes. And by the way… The November 15th is not a parody. Sorry? The November 15th post is not a parody. That's the, fold up your PFA? Yeah, I mean, that's, the ex-wife has a protection for abuse order. Obviously, the court thought this was serious enough to protect her. And he follows that up by saying that court order intended to protect her will be entirely inefficacious because it can't stop a bullet. How can that not be a threat? And nothing but a threat. You're right, Your Honor, it's not a parody. But the lines that follow the ones you just quoted are, try to enforce an order that was improperly granted in the first place. He thinks the judge needs an education on true threat jurisprudence, et cetera, et cetera. He's talking about the law. It's different in character from the statements that come prior to the PFA. So that doesn't do anything to initiate the first two lines that says, fold it up and put it in your pocket. Is it thick enough to stop a bullet? Are you suggesting that something innocuous written after something that's a direct threat initiates the direct threat? No. No, Your Honor, I would not suggest that. So those two lines, I think, again, different in character from the pre-PFA postings because they speak hypothetically. They're not direct. They don't appear to be direct statements of an intent to do something. Yes, he mentions violence. But to whom is he referring to when he says your PFA? Who is he referring to in the word your? I assume that he's referring to his wife, Your Honor. Obviously, right? So then you ask the wife, is it thick enough to stop a bullet? And you're saying she's an eggshell victim if she considers that a true threat? No, I'm not saying that. And maybe I should have made this more clear. It's not my position that on this record a jury could never find that Mr. Ellin has had the requisite mental state, simply that there are multiple competing inferences here. He testified he didn't believe his statements were threats. We can have a hard time believing that based on the text on the page, the cold record, but a jury should have been allowed to evaluate that testimony, and a jury didn't do that here. Well, I think we all agree on that in light of the Supreme Court's decision, but that still leaves us with the question of what the harmless error analysis says about that language that we've been discussing, right? That's correct. Yes, exactly. So it's my position that, again, the harmless error standard is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict here. Here we have a defendant who testified he didn't have the requisite mental state, and the jury was instructed seven times and reminded ten more times that it didn't matter what his mental state was, and after hearing the testimony and listening to the instructions in the argument, the jury convicted him, and he served 44 months in prison. It seems to me that that approach is a definition of a harmful error. Any further questions, Your Honors? I have none, no. Thank you. Time for any questions? No, thank you. Okay, thank you. Yes, sir.